You may begin when you're ready, and please watch your own clock. Your Honors, and may it please the Court, Daniel Magalotti, arguing on behalf of Petitioner Mario Santiago-Sarabia. I'd like to reserve three minutes for rebuttal. At stake in this case is whether the Executive Branch should have the power to both unilaterally define and unilaterally enforce the concept of good moral character. The Section 1101F catchall provides, the fact that any person is not within any of the enumerated categories shall not preclude a finding that for other reasons such person is or was not of good moral character. That limitless statutory language is amorphous and vague. And yet the government asserts that it has the right to both define and administer the good moral character requirement when deciding whether Mr. Santiago-Sarabia and others like him are eligible for cancellation of removal. So is it your position that it is only the enumerated reasons or in the statute that can be used to show absence of good moral character? Yes, Your Honor. We submit that the catchall itself is vague, but we're not attacking the enumerated categories. Neither the enumerated categories. No, I understand. So let's assume we have something not among the enumerated categories, but it is incredibly indicative of the absence of good moral character. Your view is that it cannot be used to show the absence of good moral character? Your Honor, neither the immigration judge, nor the BIA in this case, nor the Attorney General in Castillo-Perez relied on any of the enumerated categories. I understand. That's not what I'm asking. I'm asking your position is that it is only the enumerated categories that can be used to show the absence of good moral character? Yes, Your Honor. So genocide is not listed, I think, among the enumerated provisions in this statute. If someone had committed genocide, could that be used to show the absence of good moral character? Your Honor, genocide generally is not listed. I'll note that one of the enumerated categories is assisted in Nazi persecution specifically. The immigration judge, of course, could still exercise their discretion to deny cancellation removal. And they did in this case, as I recall. Yes, the immigration judge did, but the Board of Immigration Appeals did not affirm on that basis, only on the good moral character. So just so that we're clear, because we've danced around this, your position is nothing other than the ones listed can be used to show absence of good moral character? Yes, Your Honor, because that was Congress's decision. Yes is a good enough answer. That was Congress's decision to enumerate categories in the 1952 Act. Congress, of course, is free to expand the enumerated categories at any time it pleases, but the catch-all simply says four other reasons, which does not provide fair notice and allows arbitrary enforcement of the catch-all itself. So again, the Court should reject the Attorney General's request to be the arbiter of morality and hold that the catch-all is unconstitutional, both because it's unconstitutionally vague, both facially and as applied to Mr. Santiago Sarabia, and because the statute violates the non-delegation doctrine. Counsel, are you aware of any case binding on us that has held that the catch-all is unconstitutionally vague or that the concept of good moral character is unconstitutionally vague? No, Your Honor, there are no cases directly on point about whether under a facial challenge the catch-all is unconstitutionally vague. There have only been as applied challenges to the narrow circumstances of those individual petitioners, but not a facial challenge, Your Honor. So turning first to vagueness, again, the hallmarks of vagueness are lack of fair notice and the ability for arbitrary enforcement. Here the catch-all fails both. The plain text is facially vague and that is backed up by judicial interpretation, legislative history, executive branch interpretation, and the problem of the near miss. So turning first to the text, it simply says four other reasons, without limit, that does not provide fair notice to individuals like Mr. Santiago Sarabia, and additionally it allows the attorney general to capture any conduct he or she wishes under the catch-all. Let's talk about this case for a moment, the conduct that's being cited are repeated DUI convictions. Isn't it fair to say your client was on effective notice that these could be cited for absence of good moral character because the BIA has found so in the past and we've actually denied a petition for review in a case in which that was cited as evidence of good moral character. So can these prior decisions put your client on notice that this behavior can be shown to show absence of good moral character? No Your Honor, for a couple of reasons. First the plain text doesn't mention DUIs, the plain text mentions habitual drunkard in the enumerated category F1, but it does not mention DUIs. In the crime involving moral turpitude context, this court in Marmoleo Campos has held specifically that simple DUIs do not constitute crimes involving moral turpitude, only aggravated DUIs do. Additionally, Your Honor, there have been varying decisions about whether alcohol involved conduct constitutes lack of good moral character. Is there any decision from the BIA or from any court that you're aware of that holds that DUIs cannot be used to show absence of good moral character? Not that I'm aware of, Your Honor, but there have been different decisions about the number of DUIs, the circumstances of the DUI, and the ability of the BIA, immigration judges, the Attorney General, to make those types of decisions allows for arbitrary enforcement of the statute. So, just for one example, excuse me, Your Honor, just for one example, in In Re U, the individual had a number of illegal entries into the country and a conviction for public drunkenness. In that case, the individual did not apply for, at the time, suspension of deportation, thinking that they could not show good moral character. The BIA sua sponte reopened the case and told the person to apply for suspension of deportation. That shows that the BIA can mold the catch-all to any way it pleases, depending on the circumstances of the case and depending on the whims of the immigration judge. That is a classic example of a vagueness problem. Let me ask you one other question on vagueness. You're making a facial challenge. Yes, Your Honor. That means your position is that there is no circumstance under which the catch-all could be constitutionally applied. That's not, Your Honor, respectfully, that's not the current standard for facial vagueness challenges. Under DiMaia and Johnson, a petitioner need not show that it's unconstitutional in every circumstance, just that it might be unconstitutional in some circumstances. And here, that's clearly the case, where years of judicial interpretation, years of executive branch interpretation, the best definition of good moral character that the judges can come up with is that it changes from generation to generation, varies from community to community, and reflects the average citizen of that individual's community. So your view is that it's unconstitutional, even if it's not unconstitutional as applied to your client, because it might be unconstitutional as applied to somebody else? Yes, Your Honor. So I would point the Court to Footnote 61 in the Ricks v. District of Columbia decision. In that case, the D.C. Circuit struck down a statute that criminalized leading an immoral life. In Footnote 61, the Court says, even though nobody would disagree that that particular individual's, that individual's conduct constituted an immoral life, that was, quote, beside the point, because it did not give fair notice to any individuals that their conduct could be captured under a lack of morality requirement. So you think that without a case or a regulation or a statute, your client would be unaware that driving while intoxicated, which endangers all kinds of people, is not indicative of a character issue? Your Honor, my client, of course, has a criminal record, like many people in this country do, but the Congress did not put a criminality requirement in the catch-all. That's not my question. My question has to do with your assertion that the person didn't receive fair notice that the conduct could be used to denigrate, if you will, the person's moral character. And let's say that assault isn't listed in the statute, but someone regularly beats up his friends and family. You think that a person in that circumstance needs official notice that that is a behavior that is not viewed as expressing good moral character? Your Honor, I would distinguish assault because it involves an intent element, whereas DUIs do not involve intent. That's not my question. I'm asking you about why you would think that notice is required to inform someone that obviously, a behavior that obviously does not reflect good moral character doesn't reflect good moral character. Why is there a notice requirement? Where does that come from? Your Honor, that comes from the Supreme Court's discussion of the Vagueness Doctrine, where it says explicitly that the two pillars of the Vagueness Doctrine are notice to those individuals whose conduct might be prescribed by the statute and the risk of arbitrary enforcement. Again, the plain text of the statute simply says four other reasons. It doesn't mention DUIs. Well, arbitrariness certainly isn't true here because the regulation that you're complaining about is very clear. It has a number. It has a requirement. It isn't arbitrary. Your Honor, with respect to the BIA and the Attorney General's interpretation, Castillo-Perez does not receive deference from this court. There was no pre-Loper Bright Chevron deference given to Castillo-Perez. So the court evaluates the statute on its own without looking to the Attorney General's opinion in Castillo-Perez. Second, the regulation itself, 8 CFR 316.10, is circular in its definition. It says that individuals who commit unlawful acts that adversely reflect on moral character have lack of good moral character. Again, there's no definition of what good moral character means even in the regulation. It's just a circular definition. Additionally, in Loper Bright, the Supreme Court said that contemporaneous definitions from the executive branch issued at the time of the statute's enactment can be more persuasive under the Skidmore analysis. But under your analysis, Castillo-Perez is irrelevant. Yes, Your Honor. So that it doesn't really matter whether there's a presumption or no presumption because your position is that DUIs can never be used to show the absence of good moral character. No, Your Honor. I think. Yes. You just said before, only the stuff listed can be cited. Isn't that your position? Yes, Your Honor. Under the catch-all, DUIs cannot be used because the catch-all itself is unconstitutionally vague on its own. Okay. So your position is that it doesn't really matter whether there's a presumption or not. Even if we were reviewing the I.J.'s decision, you would say it fails because the catch-all is vague. Yes, Your Honor. So let me return to a point the government makes, which I think as a practical matter is indisputable. The I.J. also turned down cancellation of removal in his discretion or her discretion, forget which it was, and also found that you hadn't demonstrated the requisite hardship to a qualifying relative. Is there any chance in the world that if we send this back to the BIA, the ultimate result isn't going to be the same? Your Honor, I think that's for the BIA to decide. The Supreme Court's precedent — Actually, there is a futility exception, and I'm asking you whether we should invoke it. And we decide that, not the BIA. So why wouldn't remand in this case be futile? The futility exception applies only where the facts are not in dispute, and whether the agency on remand is required to take a particular action. Here, no matter what the possibility is that the BIA could or could not affirm the I.J.'s decision on other grounds, the proper course under Orlando Ventura is still to remand the case. Counsel, do we have jurisdiction even to address the I.J.'s discretionary finding under Wilkinson? If the BIA were to, on remand, reaffirm under that basis, the court would likely not have jurisdiction under Wilkinson because it's an entire new discretion. Why isn't that the circumstance that we face right now? Your client is asking this court to remand for the I.J. to consider whether subsection F1 bars your client from establishing good moral character. And as I read the record, the agency's determination on the cancellation of the finding of facts that we can't review. So I think that we're already where you are arguing we might be if the I.J. does something different on remand. But I think that that's already occurred. I believe the discretionary finding from the I.J. can still be appealed to the BIA, and the BIA could overrule the I.J.'s discretionary finding. So because the BIA didn't reach that decision, the footnote on page two of the BIA's decision said explicitly they're not reaching the discretionary determination. The only issue on appeal to this court is the good moral character finding. Your Honors, I see I have about a minute and a half left. I'd like to reserve the remaining time for rebuttal. Thank you. May it please the Court. I'm Virginia Gordon for the respondent. Your Honors, given the intersection of congressional executive authority, we do believe that the delegation was proper here. We also believe that the statute is not unconstitutionally vague, and that is because it applies to real-world facts. As my colleague pointed out, Johnson and DeMaio talked about that it's possibly you could bring a facial vagueness challenge, and this Court considered that with the particular serious crime provision. And very similar to the good moral character provision, we have real-world facts, where Johnson and DeMaio was applied to the categorical approach, the ordinary case that led to a lot of imagination, which we don't have here. We have real-world facts. So we believe that this delegation is proper. I'm not sure what relevance the phrase real-world facts has to a vagueness challenge. Either the catch-all section is unconstitutionally vague or it's not. If it's not unconstitutionally vague, I'm not even sure your opponent suggests that having three DUIs can't be considered as absence of good moral character. He's got problems with the presumption. But I don't see any argument in this case that this is an irrelevant factor. So get past real-world facts and tell me why this provision is not unconstitutionally vague. Well, if we look at it as applied to Mr. Santiago Sarabia, we see that he engaged in what longstanding principles have said is a violation of community standards, that it's especially serious to drive under the influence of alcohol. And it wasn't once, it wasn't twice, it wasn't three times, it was at least four times. That's the number of times he was arrested. And one of those times occurred after he was already placed in removal proceedings. So if we were getting to the issue of notice by that DUI, he was certainly on notice. But it's so when we look at it as applied, it's certainly not vague as applied to Mr. Santiago Sarabia. You can, a person of ordinary intelligence can understand that the choice of drinking to excess of alcohol and then getting into a vehicle is an unacceptable activity. It's criminal in all of the states. And the Supreme Court has long held that this is an especially dangerous act. So we don't see this as a vague statute. The four other reasons language has to be read in the context of the provision that it's in, and it's in the cancellation of removal provision, which is a very limited form of relief. Congress provides only four thousand per year. So that read together and looking at the regulation, we are given some boundaries with those other reasons. And it's not just it is the vagueness doctrine apply with equal force when we're talking about eligibility for discretionary relief. In other words, it's the obligation of the petitioner in this case to establish his good moral character. Right. So I can't find cases that deal with the vagueness doctrine in the context of non-criminal statutes or mandatory statutes. Are you aware of any? No, Your Honor, I'm not. I have the same I had the same challenge of finding cases that that concluded as much. What I'm seeing is we look at vagueness when it's a criminal act. And if we were looking at removability and whether the person was removable, that might have a different stance because the person's liberty interest may come into play more there. But we already there's no contest that Mr. Santiago Sarabia is removable. He conceded that. So we're looking at his eligibility for relief from removal, a discretionary grant provided by Congress and that we in the vagueness cases that I've seen, it hasn't been the same notice requirement because it's there's no liberty interest in discretionary cancellation of removal. And so we don't see a vagueness problem with giving the authority to the attorney general to look at the enumerated cases and recognize things like genocide or assault on a domestic partner or other actions that could show a lack of moral character based on the norms of the society. And then when it gets to Castillo-Perez, even if we see that as a retroactive application of a rebuttable presumption that did not exist prior to the IJ's decision, we don't believe that it was impermissibly applied here, given the record evidence that you point out where Castillo-Perez looks at the same background history that the IJ looked at. So we would have, we believe you would have the same result if you went on revand. Oh, I'm sorry. And as you noted, the IJ did deny as a matter of discretion, which is... But we review only what the BIA decided. We can't go behind that to additional reasons, even if the IJ gave those reasons. Correct? Yes, correct. So we would be, you are looking at the board's decision. The board does state in its decision that it also considered the positive factor. So we know they applied the rebuttable presumption, but ultimately Mr. Santiago Sarabia always had the burden of establishing that he was a person of good moral character during the requisite time period. So he always had the burden to show what evidence would put aside that DUI, those three DUI convictions, whether there was a presumption or not. And the board did look at that evidence. And as it says in its decision, we also considered the positive equities that the IJ considered and also, and they determined that they did not rebut the presumption, whereas the IJ determined that they did not overcome the negative. So essentially we have, we would result in the same decision based on this evidence that we can see what the board decided. And if it were to go to remand, it seems it would just be a delay in reaching the same inevitable results. That would only be if we were to remand based on the conclusion that Castillo Perez is not retroactive. Right. That doesn't really address his constitutional arguments. No, it doesn't. But as you said, the, even if we go back to delegation, this is a proper delegation because it's the broad context of immigration that both the Congress and the executive have a lot of authority over. And cases have said over time that Congress has acts at its peak when it delegates to the, to the executive, the authority over immigration laws, and it has done so here. And as we point out, we've got quite a few samples in the statute and regulations. When we read the catch-all provision in the context of those, it shows it's a limited form of release. We're not giving unfettered authority to the attorney general. And I too looked for cases where they would grant, would deny good moral character on some sort of unlikely seeming moral character, and I couldn't find anything that was, that would, that has shown that the agency has said, oh, you lack good moral character because you jaywalked five times. So I'm not seeing that they're going against it, but besides that, we, we believe that this is a proper delegation and that it's not unconstitutionally vague because of the boundaries that it has been set. So under your view, how do we review the agency's determination of the absence of good moral character? I think what you would review is, is the presumption properly, permissibly applied? Forget the presumption for a moment. Just the, we've got these listed grounds on which if you have them, you can't establish good moral character. And then we have a statute that says this doesn't preclude the agency from finding that you lack good moral character for some other reason. So in that framework, the agency finds that you lack good moral character. How do we review that determination? Can we, and if so, under what standard of review? You, I believe you can look at that as a legal question and, and again, looking at, well, is it a, we argue, is it a delegation? Yes. It's an appropriate delegation. And is it void for vagueness? We can say it's not because it's within that context. If I understood your answer, it is, you started by saying that we have essentially de novo review of legal and constitutional questions, such as the ones that are presented among the other claims. Is that right?  No, not over discretionary. So no, no, the claims that the legal claims, the legal claims and constitutional claims. Yes. Okay. And I think Judge Hurwitz's question is relating to the discretionary cancellation of removal. Okay. Well, actually, I'm sorry. I wasn't clear since what I'm asking is let's assume that this is not unconstitutionally vague. Okay. The agency says we find that jaywalking is bad moral character. How do we review that decision? Do we review it for abuse of discretion? Do we review it de novo? What's our, what's our standard of review? That is still not entirely clear after Wilkinson. That's why I asked the question. So I apologize. I prepared for that question. I missed. That is not fully clear after Wilkinson. I do know that the Sixth Circuit has decided that the good moral character determination is a mixed question of law and fact where you can't, where you would look for legal questions. So then if that were so, we would take the finding that the person had committed these crimes as unreviewable and then determine whether as a matter of law they could constitute the absence of good moral character. Right. And so it would be similar to how we're looking at the particular serious crime now and the exceptional extreme unusual hardship. So we're looking at, do the facts meet the standards? So you can look only at, we don't have disputed facts here. So you'd be looking at the legal question of whether it meets that standard. But I, but this Court has previously said it could not look at good moral character. It's a matter of discretion. And ultimately if you see it truly as a matter of discretion, then we would say that you lack jurisdiction to consider it. But I want to acknowledge that the Sixth Circuit has seen it in a different way. And it is under the statutory requirements, good moral character, the cancellation of removal is decided in two ways. First, the four statutory requirements, which good moral character falls under, and as does exceptional extremely unusual hardship. And then there's the discretionary. See, the reason I asked the question is one can read this statute as saying, you have the discretion, I, AG, to turn down an application if somebody hasn't demonstrated his good moral character. If he has these, one of these enumerated problems, you don't have that discretion.  But you do have the discretion to determine so otherwise. And if so, it would strike me that we might not have the ability to review because it's just a matter of complete discretion. Yes. And because it says the four other reasons and it's in that context, and courts have long said that it's discretionary, that if we went with prior what this court has said, then it is discretionary and you don't have jurisdiction over the good moral character decision. If there are no further questions, we will, the government rests on the briefs and we thank you for your time. Thank you. Thank you, Your Honor. There's a few quick points in rebuttal. First, de novo review applies. The Sixth Circuit in Hernandez says that when an individual would, if an individual raises a vagueness challenge to the good moral character catch-all, de novo review would apply and the court has jurisdiction over that claim. Judge Hurwitz, to your question about whether there were any cases involving application of vagueness in the cancellation context, de Maya itself was a cancellation case. This court said it had jurisdiction and applied de novo review and the Supreme Court affirmed that on appeal. Finally, to the question about extreme circumstances such as genocide, there are also extreme circumstances on the other side showing arbitrary enforcement. So, for example, in Johnson, Judge Hand said that a single lapse of marriage fidelity would constitute lack of good moral character, but because it varies from one generation to another under the judicial standard, we don't know whether that would still constitute lack of good moral character today. Definitely, additionally, in Kanaka Neon, the court said that because an individual could read the Constitution only in his own language and not in English, that constituted lack of good moral character. So while there might be extreme circumstances that could be captured either by a lack of discretionary relief or even under the aggravated felony enumerated category in F-8, there are also circumstances on the other side showing that the statute is applied to any and all conduct. We ask that the court grant a petition for review and remand the case to the BIA. Thank you. Mr. Magalotti and your co-counsel, I want to thank you for being pro bono counsel in this case. It aids the court tremendously when we have pro bono counsel. So thank you for for your work in this case and your good argument on both sides. This case is now submitted.
judges: GRABER, HURWITZ, DESAI